UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 18-20451
Hon. Denise Page Hood

v.

FRANCISCO PATINO,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR
AN EVIDENTIARY HEARING AND A NEW TRIAL
PURSUANT TO FEDERAL RULE 33 [ECF No. 251]**

**I.    Introduction**

On September 22, 2021, a jury convicted Defendant Francisco Patino of multiple counts of conspiracy to commit health care fraud, health care fraud, and money laundering. On December 3, 2021, Defendant's trial counsel (David A. Nacht and Fabiola Galguerra), with Defendant's consent, were permitted to withdraw. ECF No. 230. On December 8, 2021, new counsel (Martin E. Crandall) was appointed for Defendant, and Mr. Crandall continues to represent Defendant.

On August 16, 2021, Defendant filed a Motion for an Evidentiary Hearing and a New Trial Pursuant to Federal Rule 33(b)(1). ECF No. 251. The Government has filed a response; Defendant has not filed a reply.

**II.    Legal Standard**

Rule 33. New Trial

(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b) Time to File.

(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

## I. Analysis

Defendant's Motion was filed approximately 11 months after the jury's verdict finding Defendant guilty. Accordingly, Defendant's Motion is time-barred if it is grounded on any reason other than newly discovered evidence.

Defendant labels his Motion as one brought pursuant to Rule 33(b)(1). In the Motion itself, Defendant refers only to "Federal Rule of Criminal Procedure 33." ECF No. 251, PageID.9547. Defendant claims that he is entitled to an evidentiary hearing and new trial based on "newly discovered evidence from trial transcripts, client interviews and related materials which demonstrate his trial

2

counsel's ineffective assistance at trial and in preparation for trial in violation of [Defendant's] Sixth Amendment Constitutional Right to counsel." *Id.*

In his brief in support of the Motion, Defendant utilizes 28 of the 30 substantive pages to identify and discuss the trial testimony of nine witnesses called by the Government at trial. Defendant offers a perspective of what he contends his trial counsel should have done to cross examine witnesses or investigate or otherwise take action to address certain issues and testimony. Defendant utilizes the other two pages to contest his trial counsel's failure to call a particular witness (Deborah Gamble, formerly the Office Manager for Defendant's practice) and gather information from Defendant's previous counsel, Brian Lennon, who represented Defendant prior to trial counsel.

The Court recognizes that the information described in the Motion may be "newly discovered evidence" for Defendant's current legal counsel, Mr. Crandall, and some of the information, if it had been presented at trial, might constitute new evidence for the jury who heard the case. The Court, however, is not persuaded that any of the information set forth by Defendant in the Motion is "newly discovered evidence" *vis a vis* Defendant or his trial counsel. As reflected by Defendant's discussion of the nine called witnesses, Defendant knew about, and his trial counsel allegedly was aware of, the following evidence that Defendant asserts is newly discovered (emphasis by court):

3

1. Re: Witness Yasser Mozeb: "<u>Dr. Patino</u> denied this theory completely, <u>gave counsel materials to cross examine Mozeb</u> . . ." and "This was totally untrue and <u>this issue was raised by Dr. Patino and never addressed by trial counsel</u>." ECF No. 251, PageID.9551.

2. Re: Witness Angela Bozyk: "<u>Dr. Patino explained</u> that it was Bozyk's job as an M.A. to file reports and . . ."; "<u>Dr. Patino wanted Mr. Henry subpoenaed to explain</u>, and this never occurred"; "<u>Dr. Patino explained to his trial counsel</u> that only patients who requested . . . shots were given such injections"; "<u>Trial counsel knew</u> that Dr. Patino . . . never billed Medicare nor was reimbursed from Medicare for any of these . . . shots"; "<u>This information was documented</u> yet never presented"; "<u>Trial counsel knew</u> that Dr. Patino was trained" to scan only one position and that different methods were used by different physicians; "<u>Trial counsel knew</u> that prescriptions were pre-written but not pre-signed by the physician;" "contrary to Defendant's policies and SOP's for which many could have attested, as was discussed with trial counsel as potential witnesses"; "<u>Trial counsel knew</u> this patient "Teresa," and "<u>Trial counsel knew</u> how Teresa begged to get more injections . . ."; and "<u>Trial counsel failed to pursue</u> this vital information on cross examination . . ." *Id.* at PageID.9551-56.

3. Re: Witness Dr. Glenn Saperstein: "<u>Trial counsel knew</u> that facet joint injections were properly billed . . ."; "<u>Trial counsel did not clarify</u> on cross examination of Dr. Saperstein to correct the record"; "<u>trial counsel knew</u> that trigger points are only injected into muscles, . . ."; "<u>Trial counsel also knew</u> that the clinic only administered MBBs"; "<u>Trial counsel knew</u> that every single patient had . . ."; "<u>Trial counsel did not follow up on cross examination</u> . . ."; "<u>Trial counsel knew</u> that many patients did not receive back injections . . ."; "<u>Trial counsel further knew</u> that Dr. Patino actually reached out to local physical therapy businesses . . ."; "Trial counsel failed to correct Dr. Saperstein . . ."; "<u>Trial counsel knew</u> that Dr. Saperstein was fired . . ."; "Trial counsel did not cross-examine Dr. Saperstein"; "<u>Trial counsel knew</u> that [Dr. Saperstein] was always paid properly and even provided financial records to support this"; and "<u>Trial counsel failed to thoroughly review the payroll and cross examine</u> to disprove Dr. Saperstein's claim." *Id.* at PageID.9556-59.

4. Witness Stephen Quindoza: "<u>Trial counsel knew</u> that Rashid advised Dr. Patino that Global Quality was an investment company . . . [and] that [Dr.

4

Patino] never signed on or agreed . . . [and] the document must be fraudulent . . .";  "<u>Trial counsel knew</u> that most of the patients at RenAMI who he treated had already failed with other physicians and may have had an addiction . . . [and] [Defendant] <u>continually advised his trial counsel</u> of his agenda to wean patients from narcotics . . ."; "<u>trial counsel knew</u> that . . . he recommended physical therapy to his patients"; "Trial counsel failed to correct the record . . ."; "<u>Trial counsel knew</u> that Dr. Patino did perform trigger point injections for some patients and those were billed properly . . . [and] <u>failed to correct the record</u> . . ."; "<u>Trial counsel knew that billings were the work product of and under the control of Gamble</u> . . . [and] <u>knew how Gamble</u> insisted on closing the doctor's notes in the evening so Dr. Patino never knew about or questioned her misbilling or had any knowledge of this"; "<u>Trial counsel was advised to subpoena Gamble</u> as a defense witness . . ."; and "<u>Trial counsel did nothing to</u> further investigate into Gamble's role . . . <u>nor did he subpoena Gamble</u> to correct the mischaracterization of Dr. Patino as the primary beneficiary." *Id.* at PageID.9559-63.

5. Re: Witness Dr. Anand Thakur: "<u>Trial counsel knew</u> that Mr. Rashid had been upset with Dr. Thakur for personal reasons . . ."; "<u>Trial counsel understood</u> . . ."; "<u>Trial counsel failed to cross examine Dr. Thakur</u> . . ."; "<u>Trial counsel understood . . . Trial counsel had been educated in this regard . . .</u>" *Id*. at PageID.9563-64.

6. Re: Witness (and co-defendant) Dr. David Yangouyian: "<u>Trial counsel knew</u> that Nerve Block injections could be learned quickly and Dr. Yangouyian learned . . ."; "<u>Trial counsel knew</u> that 3 inch needles were not necessary for MBB injections . . ."; "<u>Trial counsel knew</u> that there were syringes with Marcaine and others . . ."; "<u>Dr. Patino also advised counsel</u> that Dr. Yangouyian was trained . . . [yet] Trial counsel did not correct the trial record regarding the purposes of the syringes . . ."; "<u>Trial counsel knew</u> the different methods of using the Fluoroscopy machine . . . [and] <u>it was explained to trial counsel</u> that pain *management* doctors typically used . . . [and] <u>trial counsel again failed to listen,</u> . . ."; "<u>Trial counsel knew</u> . . ."; "Trial counsel did not looking into the guidelines . . ."; "<u>Trial counsel knew</u> this was false . . . [and] trial counsel never corrected this false statement"; "<u>Trial counsel knew</u> that Rashid took the unit . . ."; "<u>Dr. Patino . . . explained to trial counsel</u> . . ."; "<u>Trial counsel failed to cross-examine with this information provided . . . from Dr. Patino . . .</u>"; "<u>Trial counsel understood</u> that Dr. Patino disagreed with this

5

medical opinion . . .<u>Trial counsel also understood</u> . . . Trial counsel failed to show the flawed logic on drug testing . . .";  "<u>Trial counsel understood</u> . . ." *Id.* at PageID.9565-9570.

7. Re: Witness James Gladstone: "<u>Trial counsel knew</u> that Gladstone only saw Dr. Patino . . . [for] 2.5 years"; "<u>Trial counsel knew</u> . . . [and] failed to correct this information . . ."; "<u>Trial counsel knew</u> . . . and counsel did not cross examin[e] on these important points"; "trial counsel failed to investigate and subpoena a myriad of patient witnesses . . ."; "<u>Trial counsel also knew</u> that Gladstone himself did not take all the medicine prescribed." *Id.* at PageID.9570-71.

8. Re: Witness Gregory Malysa: "<u>Trial counsel knew</u> that there many visits where no injections were provided . . . [and] did not follow up with cross examination on this point"; "<u>Trial counsel knew</u> . . . [but] made no mention . . ."; "<u>Trial counsel knew</u> that the purpose and steps of the procedure . . . were all explained to Malysa . . . [and] that Dr. Patino had a treatment plan . . .[but] trial counsel did not take this opportunity to cross examine or mention . . ."; "<u>Trial counsel knew</u> that this was a false statement . . . [and] failed to correct the false statements . . ."; "<u>Trial counsel knew</u> that Dr. Patino was unaware of the billing as that was Gamble's responsibility . . . [but] did not look into Gamble's role . . ."; "<u>Trial counsel knew</u> this was a false statement . . ."; "<u>Trial counsel knew</u> that Dr. Patino had several lengthy discussions with Malysa . . . [and] did not mention [that] to the jury or use in cross examination"; "<u>Trial counsel knew</u> that the witness and Dr. Patino openly talked about rehab . . . [but] did not cross examine on Dr. Patino's discussions promoting physical therapy"; "<u>Trial counsel knew this was strictly Gamble's issue . . . [and] failed to point out this false event nor mention Gamble's possible role in the misbilling.</u>" *Id.* at PageID.9571-74.

9. Re: Witness Dr. Daniel Scott Kreiner: "<u>Trial counsel knew</u> that Dr. Kreiner . . . was unfamiliar with the patient pool Dr. Patino treated . . ."; "<u>Dr. Patino gave his trial counsel much more information on the distinction between his practice and Dr. Kreiner's</u>"; "Trial counsel did not effectively cross examine Dr. Kreiner . . . [and] [t]his failure allowed the prosecution . . ."; "<u>Trial counsel knew</u> that MBBs were not necessary . . . [but] did not clarify nor emphasize that Dr. Kreiner and Dr. Patino treated different kinds of patients which require different approaches for

6

<blockquote>treatment"; and "<u>Trial counsel did not take the opportunity to learn about Dr. Patino's patient pool.</u>" <i>Id.</i> at PageID.9575-78.</blockquote>

As the foregoing summaries show, the "newly discovered evidence" was known to both Defendant and trial counsel before or at trial. Accordingly, the Court does not find such "evidence" and allegations to be "newly discovered" for purposes of Rule 33.

Defendant further asserts that his counsel should have called Deborah Gamble, the Office Manager. But, as the quoted language above and the content of his argument in the Motion demonstrate, nothing about Gamble's purported actions and conduct is new evidence. The information regarding Gamble and Defendant's desire to subpoena her to trial were known to Defendant and his trial counsel prior to and at trial. There also can be no question that Defendant and his trial counsel knew that Defendant's previous counsel (Brian Lennon) had worked on Defendant's case and had a case file regarding his representation of Defendant, including any work with a forensic accountant. Accordingly, the Court finds that the existence of Gamble and previous counsel's case file on Defendant's is not "newly discovered evidence" for purposes of Rule 33.

In the end, the Court finds that Defendant's Motion is very much what he suggested in his introductory paragraph—it is a motion based on alleged ineffectiveness of trial counsel. A motion based on ineffective assistance of counsel, however, may not serve as the basis for a new trial motion under the

"newly discovered evidence" prong of Rule 33 if the facts alleged in support of the motion were known to the defendant at the time of trial. *See, e.g., United States v. Seago*, 930 F.2d 482, 489 (6th Cir.1991).

For these reasons, the Court concludes that Defendant has failed to establish that there is any newly discovered evidence under the parameters of Rule 33. As the Court has determined that the Motion is not grounded on any newly discovered evidence, Defendant was required to file his motion for an evidentiary hearing and new trial "within 14 days after the verdict or finding of guilty." F.R.Cr.P. 33(b)(2). Defendant did not file the Motion within 14 days after the verdict or finding of guilt (or even within 14 days of the change of counsel). The Court therefore denies the Motion as time-barred.

Accordingly,

IT IS ORDERED that the Motion for an Evidentiary Hearing and a New Trial Pursuant to Federal Rule 33(b)(1) [ECF No. 251] is DENIED.

IT IS SO ORDERED.

Date: December 21, 2022                    s/Denise Page Hood
                                           Hon. Denise Page Hood
                                           United States District Judge